[Civ. No. 6485. Second Appellate District, Division Two.—February 9, 1931.]

BELLE SHARP, Appellant, v. E. D. LEAVITT & COMPANY (a Corporation) et al., Respondents.

J. S. LePage and Frank Linnell, Sr., for Appellant.

Walter E. Burke and Harold E. Thomas for Respondents.

ARCHBALD, J., *pro tem.*—This is an appeal from a judgment in favor of defendants and from an order of the trial court denying a new trial. The defendant E. D. Leavitt & Company, a California corporation, secured from the commissioner of corporations a broker's certificate and filed a bond in the sum of $5,000 as required by section 5 of the Corporate Securities Act (Act 3814, p. 1376, Deering's Cons. Supp. 1925–27). The surety on the bond was the defendant Hartford Accident and Indemnity Company. Thereafter Leavitt & Company employed one LeNaire to

sell stock of the South Coast Gas Company. His instructions were to sell for cash or marketable securities only and with a deposit of not less than thirty per cent at time of taking the order. From the record it appears that the agent's authority to make a contract of sale for his principal was limited only to securing the approval of the principal if any marketable securities were taken, but was full and complete if the sale was for cash. LeNaire secured an order for twelve shares of the stock from plaintiff at $100 per share, plaintiff giving him a deposit of $40 cash and a check for $60, payable to the agent. LeNaire turned the check into the company for credit to the plaintiff and wrote on the subscription, ''Due 300.00 to be paid 10/4/27'', the $300 plus the $60 check making the first payment required. The cash he kept for himself, saying nothing to his employer about it. The books did not show for what the $60 credit was given. Later on LeNaire explained that the credit was in error and instructed that it be transferred to one Benjamin. On October 7, 1927, a few days after the order was taken for the twelve shares of stock, he succeeded in prevailing upon plaintiff to subscribe for an additional thirty shares at $100 per share. The first payment of $900 in this transaction was made up of a credit of the $100 which plaintiff gave LeNaire on the first subscription and her check in his favor for $800. The balance of the purchase price plaintiff agreed to pay in six equal installments on or before the tenth day of each month following the date of the subscription, with interest at seven per cent. About the 12th of October, 1927, LeNaire approached plaintiff with the proposition that if she would deed a lot which she had in Garden Grove to a man named McDonald, to whom the former was in debt, he, LeNaire, would take it at a valuation of $2,100 and would himself pay the balance due on plaintiff's subscription for the stock from $6,000 in dividends on certain stock of his that he had coming from E. D. Leavitt & Company and others. Plaintiff executed the deed as requested the afternoon of October 12th, and in the evening of that day LeNaire came to her home and offered his note dated October 12, 1927, for $2,100, payable one year after date. Plaintiff testified that she told him she did not want the note, but that he left it among some papers on her table, where she found it a day or two afterward and kept it in her possession until the time of trial. Neither the first

nor second subscription taken by LeNaire from plaintiff was turned in to the defendant Leavitt & Company, nor was any of the money paid LeNaire by plaintiff, with the exception of the check for $60. A few days after the last transaction LeNaire disappeared and is now a fugitive from justice.

The complaint alleged in substance that defendant Leavitt & Company, acting through its agent LeNaire, on or about the seventh day of October, 1927, falsely and fraudulently represented to plaintiff that if she would pay LeNaire $900 and convey said Garden Grove lot to his nominee at an agreed consideration of $2,100 he, LeNaire, would have issued to her thirty shares (half preferred and half common) of the South Coast Gas Company's stock, fully paid, and that relying on such representations she entered into the transaction; that said representations were made for the purpose of defrauding plaintiff, were known to be false and were made without any intention of performing the same. The complaint then alleges the making of the bond by the co-defendant surety company, conditioned upon the principal, E. D. Leavitt & Company, and any and all of its agents and employees strictly complying with the provisions of the Corporate Securities Act and honestly and faithfully applying all funds received and honestly and faithfully performing all obligations and undertakings in the purchase and sale of securities by them, and, further, paying all damages suffered by any person damaged or defrauded by reason of the violation of any of the provisions of said act, "or by reason of any fraud connected with or growing out of any transaction contemplated by the provisions of the act"; following which is the allegation that the bond has been breached by the defendants and plaintiff damaged by the acts alleged in the sum of $3,000.

The complaint does not allege nor does the evidence show any misrepresentation as to the value of the stock. The trial court found in substance that it is not true that defendant E. D. Leavitt & Company through its agent made the representations alleged; that it is true that plaintiff agreed to purchase the thirty shares of stock and paid to LeNaire as agent of the defendant company the sum of $900 on account of said subscription; that said LeNaire acted entirely outside the scope of his authority in receiving real property to provide money for the payment of the balance of said subscription and that said defendant corporation is

not bound by his actions; that defendant E. D. Leavitt & Company has received from plaintiff the sum of $900 as a first installment on her stock subscription and no more, and that the latter has not been cheated out of said sum of $900, or said lot, by defendant E. D. Leavitt & Company.

Appellant contends that the court erred in finding as above set forth and urges that judgment should have been rendered in her favor for the $900 and the value of the land, or at least for the sum of $900. As we have pointed out, the evidence shows the deal was made with the agent several days before the lot was mentioned. With regard to the lot and the payment by LeNaire of the balance of her subscription plaintiff testified as follows, on redirect examination: "Q. Where did he represent he was going to get the money to pay for this stock for you? A. From the Leavitt & Company and other public utilities where he had stock in. . . . Q. And the deed was going then, as I understand it, to J. K. McDonald, to pay off the debt. Did he say he was going to get any money on the deed, also from J. K. McDonald? A. He did not say he was. Q. He was not going to raise, then, any money on the deed? A. He did not say anything about it, if he was." It would seem from the uncontradicted evidence that plaintiff made the second subscription for stock and paid the first installment of $900 thereon without the inducement of any misrepresentations by the agent. The lot transaction as shown by the undisputed evidence was purely personal between plaintiff and LeNaire and had nothing to do with the defendant Leavitt & Company. It was entirely beyond the scope of his employment and could not bind his principal even if he tried so to do, so we fail to see how there could be any recovery, so far as the value of the lot is concerned, on the basis of agency (*Ackerman* v. *Channel Commercial Co.*, 53 Cal. App. 259 [199 Pac. 1101]) or upon the bond (*Filarski* v. *Covey*, 75 Cal. App. 353 [242 Pac. 874]). With regard to the $900 paid to the agent in the line of his duty, it would seem to have been paid on a valid, existing obligation; and it not appearing that plaintiff has rescinded the same, or that she had any grounds of rescission, or that E. D. Leavitt & Company is not fully able to carry out its part of the agreement, we see no error in the findings and judgment of the trial court in regard thereto.

■ Counsel for appellant contend that under section 5 of the Corporate Securities Act (Stats. 1925, p. 967) defendant corporation is liable for all the acts of its agent even though without the scope of his employment. We have quoted heretofore substantially the provisions of the bond in question, which follows the requirements of the act, and it is sufficient to say that the conditions required to be in the bond are tied directly into transactions under the act, which the lot deal is not. ''Strict compliance with the provisions of this act,'' ''faithful and honest performance of all obligations and undertakings in the purchase or sale of securities'', ''payment of all damages suffered by any person damaged or defrauded by reason of the violation of any of the provisions of this Act or by reason of any fraud connected with or growing out of any transaction contemplated by the provisions of this Act'', is the language used, and the lot deal could not by any stretch of the imagination be held to be within the provisions of the act or a violation of any of them, or to be a transaction ''contemplated by the provisions'' of the act.

■ With regard to the attempted appeal from the order denying the motion for a new trial, it is sufficient to say that such an order is nonappealable. (Sec. 963, Code Civ. Proc.)

Appeal from order dismissed. Judgment affirmed.

Works, P. J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 11, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 10, 1931.